UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

A.L., by his next friend,
TARA LLOYD,
And
R.N., by his next friend,
KIMBERLY NEWHOUSE,
And
K.S., by her next friend,
NICHOL SOBOTIK,

       Plaintiffs,

v.                                                                          Case No. 2:20-cv-276

BETH KAMINSKI,
Individually and in her official
Capacity as Principal of
Kettle Moraine High School,

       Defendant.

N.J., by his next friend,
KELLY JACOB,

       Plaintiff,

v.                                                                       Case No. 1:20-cv-227

DAVID SONNABEND,
Individually and in his official
Capacity as Associate Principal of
Shattuck Middle School,

       Defendant.

**DEFENDANTS' JOINT BRIEF IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

The Plaintiffs in Case No. 1:20-cv-227 (the "Neenah Case") and Case No. 2:20-cv-276 (the "Kettle Moraine Case") have brought suit against their respective school administrators, Defendants, David Sonnabend and Beth Kaminski, individually and in their official capacities. Both suits seek injunctions to allow the various Plaintiffs to wear shirts that depict guns in their respective schools—Shattuck Middle School in the Neenah Joint School District and Kettle Moraine High School in the Kettle Moraine School District.

While the individual shirts worn by N.J. at Shattuck Middle School and A.L., R.N., and K.S. at Kettle Moraine High School all contain various depictions of firearms or related materials, their shirts are not protected speech. Without satisfying this threshold requirement, their claims must be dismissed without any further analysis.

**FACTS**

**A.     The Neenah Case.**

N.J. is a student who attended Shattuck Middle School in the Neenah Joint School District. Neenah Compl. [Case No. 1:20-cv-227, ECF 1], ¶ 6. N.J. states that he is a supporter of the Second Amendment and a gun enthusiast. *Id.* ¶ at 9. N.J. has brought suit because his associate principal, Mr. Sonnabend, has told him that he is prohibited from wearing clothing that depicts firearms. *Id.* at ¶ 16. N.J. seeks to wear two particular shirts which are at issue in this case. *Id.* at ¶ 14.

One shirt has the inscription "Smith & Wesson Firearms – Made in the USA Since 1852" and contains the logo of the Smith and Wesson company and an image of a revolver (the "N.J. Smith & Wesson T-Shirt"). *Id.*[1]

---

[1] An image of the N.J. Smith and Wesson T-Shirt is available at https://www.postcrescent.com/story/news/2020/02/24/neenah-student-sues-middle-school-over-gun-themed-shirt-restrictions/4858200002/.



The other shirt has the inscription "I'm a Patriot – Weapons are Part of My Religion" and has "2/A" and "17/76" written on it, along with a medieval helmet and two antique rifles (the "Patriot Sweatshirt").[2]



N.J. claims that wearing these shirts are speech protected by the First Amendment. *Id.* at ¶ 33. He states that by not permitting him the wear these shirts, Mr. Sonnabend has violated his freedom of expression. *Id.* at ¶ 37.

---

[2] An image of the Patriot Sweatshirt is available at https://www.washingtonpost.com/nation/2020/02/26/gun-shirts-school/.

3

**B.     The Kettle Moraine Case.**

A.L., R.N., and K.S. are students at Kettle Moraine High School in the Kettle Moraine School District. Kettle Moraine Amend. Compl. [Case No. 2:20-cv-276, ECF 10], ¶ 8. The Kettle Moraine Plaintiffs claim that they are supporters of the Second Amendment and are gun enthusiasts. *Id.* at ¶ 11. The Kettle Moraine Plaintiffs have brought suit because their principal, Ms. Kaminski prohibited them from wearing certain articles of clothing that depicts firearms. *See id.* at ¶¶ 21, 26, 32. The Kettle Moraine Plaintiffs seek to wear three particular shirts which are at issue in this case. *Id.* at ¶ 14.

One shirt which was worn by R.N. has the inscription "pew Professional" and the outline of an AR-15 style rife (the "Pew Shirt"). *Id.* at ¶¶ 14, 20. Another shirt which was worn by A.L. has the inscription "Wisconsin Carry, Inc." and has the logo of that organization, a handgun tucked behind the inscription as though the gun were in a holster and the inscription were a belt (the "WCI Shirt").[3] *Id.* at ¶¶ 14, 24. The third shirt which was worn by K.S is alleged to bear "the logo of the Smith & Wesson company" (the "K.S. Smith & Wesson Shirt"). *Id.* at ¶¶ 14, 29.[4]



---
[3] An image of the PEW and WCI Shirts is available at https://www.washingtonpost.com/nation/2020/02/26/gun-shirts-school/.
[4] While images of the other shirts are publicly accessible as they were submitted by Plaintiffs to media stations, there is no such available image of the K.S. Smith & Wesson Shirt. For purposes of this motion, the image is not necessary as the Amended Complaint simply alleges that the shirt only contains the logo of the Smith & Wesson company. The Amended Complaint does not allege that the shirt contains any image of a firearm or any message other than the company logo.

The Kettle Moraine Plaintiffs claim that wearing these shirts are speech protected by the First Amendment. *Id.* at ¶ 43. They state that by not permitting him the wear these shirts, Ms. Kaminski has violated their freedom of expression. *Id.* at ¶ 47.

## JUDGMENT ON THE PLEADINGS STANDARDS

Pursuant to Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings any time after the complaint and answer have been filed by the parties. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A motion for judgment on the pleadings is reviewed by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* (citing *Pisciotta v. Old Nat. Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007)). The facts in the complaint are viewed in the light most favorable to the nonmoving party. *Id.* at 827. Nevertheless, the Court need not ignore facts set forth in the complaint that undermine the plaintiffs' claim or give weight to unsupported conclusions of law. *Id.* Ultimately, the court must find that there are sufficient "factual allegations . . . enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

## ARGUMENT

**I.    THE SHIRTS AT ISSUE IN THIS CASE DO NOT CONSTITUTE SPEECH UNDER THE FIRST AMENDMENT.**

A preliminary issue in all free speech cases is whether the alleged expression constitutes speech for purposes of the First Amendment. Schools have "a pretty free hand" in regulating unprotected speech. *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 673 (7th Cir. 2008). Thus, for Plaintiffs to move forward in their lawsuits, they must have pled facts that show that the shirts constitute protected speech.

5

Generally, merely wearing clothing is not considered protected expression. *See Brandt v. Bd. of Educ. of Chi.*, 480 F.3d 460, 465 (7th Cir. 2007). One's choice of clothing does not constitute "speech" protected by the First Amendment absent some message displayed on the clothing itself, or surrounding circumstances that would indicate the wearer intended for the clothing to constitute some message. *Palmer v. Paxton*, Civil Action No. 4:15-CV-657, 2016 U.S. Dist. LEXIS 134708, at *25-27 n.8 (E.D. Tex. Sep. 29, 2016). Nonverbal conduct, such as wearing a certain article of clothing, is only construed to be "speech" if it is "sufficiently imbued with elements of communication"; that is, if "an intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it." *Griggs v. Fort Wayne Sch. Bd.*, 359 F. Supp. 2d 731, 737 n.7 (N.D. Ind. 2005) (citing *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 2539, 105 L.Ed.2d 342, 353 (1989)).

Clothing containing printed words and pictures are not constitutionally protected if the message being conveyed is not expressive of a clear and unmistakable message. *See Brandt*, 480 F.3d at 466. "Otherwise every T-shirt that was not all white with no design or words, with not even the manufacturer's logo or the owner's name tag, would be protected by the First Amendment, and schools could not impose dress codes or require uniforms without violating the free speech of the students." *Id.* Under these well-established standards, it is clear that none of the shirts at issue in this case are "speech": they fail to convey a clear message that would be understood by those that view it. *See Johnson*, 491 U.S. at 404.

### A. The "Pew" Shirt is not protected expression as it is a picture of a firearm with a non-sensical message.

The "Pew" Shirt is not protected speech. Rather, it is merely a picture of an automatic assault rifle with a meaningless message. For example, in *Griggs*, an elementary school student wore a t-shirt to school that contained the Creed of the United States Marines and displayed a large

6

picture of an M16 rifle. 59 F. Supp. 2d at 733. In discussing the school's dress code provision banning symbols of violence, the court explained that:

> many 'symbols of violence' that are banned by the Rule will not qualify as 'speech,' and thus the First Amendment will not even come into play. For instance, imagine that Griggs's shirt **featured only the M16, with no accompanying text. That shirt probably would not constitute 'speech'** (an intended, particularized message that observers are likely to understand, *Johnson*, 491 U.S. at 404), and thus its prohibition under the Rule would not implicate the First Amendment at all.

*Id.* at 742 (emphasis added).

Here, the Pew Shirt is simply a picture of an assault rifle and the only accompanying text is the nonsense word "Pew" followed by the word "professional." R.N. pleads that the word "pew" is used to denote the sound made by real or futuristic firearms when they discharge. Kettle Moraine Amend. Compl., ¶ 15. He claims that the Pew Shirt supports responsible firearm use through improving marksmanship. *Id.* at ¶ 19. The average person would in no way be able to perceive that a picture of an assault rifle with the cartoonish word "pew" has anything to do with responsible firearm usage. In fact, Plaintiff's need to explain in his Complaint what "pew" means demonstrates that even Plaintiff recognizes that the average person would not know the meaning of "pew."

There is simply no discernable message on the Pew Shirt, and it is akin to the picture of an M16 rifle with no accompanying text discussed in *Griggs*. The Pew Shirt fails to convey a clear message that would be understood by those that view it and it is therefore not protected by the First Amendment on its face.

    **B.**    **The "WCI" Shirt and the N.J. "Smith & Wesson" Shirt are not protected speech as they are merely commercial advertisements with a picture of a gun.**

The WCI Shirt and the N.J. Smith & Wesson Shirt also do not constitute speech because they too fail to convey a particularized message with a great likelihood that the message will be

7

understood by those who view it. *See Johnson*, 491 U.S. at 404. These shirts are merely advertisements for companies that happen to have a picture of a firearm on them.

As stated by the court in *Griggs*, an isolated picture of a firearm is in all likelihood not protected speech as it does not convey any clear message—it is just a picture of a firearm. 59 F. Supp. 2d at 742. The inclusion of a company name does little to transform the unprotected speech to protected speech. The WCI Shirt is admittedly only an advertisement for Wisconsin Carry, Inc., a gun rights organization. Kettle Moraine Amend. Compl., ¶ 17. Likewise, the N.J. Smith & Wesson Shirt is an advertisement for the Smith & Wesson company. Neenah Compl., ¶ 14. There are no other particularized meanings to these shirts, nor do they clearly express any beliefs.

These shirts are in far contrast to the shirts in *Schoenecker v. Koopman*, which were found to be akin to works of art. 349 F. Supp. 3d 745, 752 (E.D. Wis. 2018). One shirt (the word "Love" spelled out with images of weapons) was based on a work of art, and the other shirt (the phrase "Celebrate Diversity" beneath images of various firearms) was a form of parody, which was viewed as protected expression by the court. *Id.* In fact, the *Schoenecker* court recognized that "a shirt that contained the manufacture's logo" is not deserving of First Amendment protection. *Id.* at 751-52 (citing *Brandt*, 480 F.3d at 466).

Simply put, both the WCI shirt and the N.J. Smith & Wesson Shirt merely contain an isolated picture of a gun with a logo or advertisement. They do not convey any significant message or idea and are not deserving of First Amendment protection.

### C. The "Smith & Wesson" Shirt is solely an advertisement with no particularized message, undeserving of First Amendment protection.

The Smith & Wesson Shirt worn by K.S. also fails to convey an obvious message. As alleged in the Amended Complaint, the shirt merely contains the words "Smith & Wesson" and an image of the company's logo. Simply wearing a shirt with a company's name on it does not convey

8

any obvious, readily understandable message. *See Brandt*, 480 F.3d at 466; *Schoenecker*, 349 F. Supp. 3d 745 at 751-52. Advertising for a company, even one that sells firearms, does convey a clear message of support for gun rights, or the value to society of personal possession of firearms as alleged in the Kettle Moraine Complaint. This shirt is not entitled to First Amendment protection as a matter of law because it is equivalent to the act of wearing a t-shirt with the Nike or Coca Cola logo.

> **D.  The "Patriot Shirt" does not convey any clearly understood message and is undeserving of First Amendment protection.**

The Patriot Shirt is analogous to the shirts at issue in *Brandt* and it too does not convey a clear message that would entitle it to First Amendment protection.

In *Brandt*, a group of middle school students protested the outcome of a contest to choose the official class shirt by creating and wearing shirts that were obviously meant to mimic the contest winning shirt. *See Brandt*, 480 F.3d at 465. The shirt contained a crude picture of a student with the words "Gifties 2003", the nickname for the group of students who had lost the contest. *Id.* In denying the plaintiff's motion for preliminary injunction, the Seventh Circuit determined that even though the shirts were specifically worn to protest the school's contest, the shirts were not speech that was protected by the First Amendment. *Id.* at 466. The Court held that "the picture and the few words imprinted on the Brandt T-shirt are no more expressive of an idea or opinion that the First Amendment might be thought to protect than a young child's talentless infantile drawing which Brandt's design successfully mimics." *Id.* at 465-66.

The Patriot Shirt is also comparable to the t-shirt found to be unprotected in *Miller v. Penn Manor Sch. Dist.*, which the court described as follows:

> prominently displays images of an automatic handgun on the front pocket area and back of the T-shirt. The front pocket of the T-shirt is also imprinted with the statement 'Volunteer Homeland Security' with the image of an automatic handgun

9

> placed between the word 'Volunteer' above the handgun and the words 'Homeland Security' below the handgun.
>
> The back of the T-shirt is imprinted with the statement 'Special Issue-Resident-Lifetime License, United States Terrorist Hunting Permit, Permit No. 91101, Gun Owner-No Bag Limit' in block letters superimposed over a larger automatic handgun.

588 F. Supp. 2d 606, 611 (E.D. Pa. 2008). In denying the plaintiff's request for a preliminary injunction, the Court never reached the issue of substantial disruption because it found that the t-shirt did not constitute protected speech. *Id.* at 625. The Court characterized the t-shirt as containing a "meaningless . . . message that has no place in a public school" and "that there is no constitutionally protected political message contained in [plaintiff's] shirt." *Id.*

Here, the Patriot Shirt is no more expressive than the *Brandt* shirt and it does not clearly convey the message that N.J. claims—the value to society of personal possession of firearms. The message is in stark contrast to the shirt in *Griggs* which contained the "Creed of a United States Marine" along with an image of a firearm. 359 F. Supp. 2d at 732-33. This is the type of readily understood message that can be considered speech under the First Amendment. *Id.* at 742. Quite simply, the statement "weapons are part of my religion" does not connote any commonly understood message. Is N.J. attempting to connote that he uses weapons as part of religious ceremonies or that he worships weapons like a deity? The message on the Patriot Shirt is as meaningless as the one addressed in *Miller* and it too does not deserve First Amendment protection.

In sum, images of a medieval helmet and guns with the words "weapons are part of my religion" does not convey a particularized message that would be readily understood by those who view it. *See Johnson*, 491 U.S. at 404.

10

## CONCLUSION

For the reasons stated above, Defendants respectfully request an Order granting their motions for judgment on the pleadings and dismissing Plaintiffs' claims in their entirety and with prejudice.[5] None of the shirts that Plaintiffs seek to wear in their schools constitute an expression of speech that is protected under the First Amendment.

Dated this 30th day of July, 2020.

                                            JACKSON LEWIS P.C.
                                            Attorneys for Defendants

                           By:    /s/ *Ronald S. Stadler*
                                         Ronald S. Stadler
                                         State Bar No. 1017450
                                         Jonathan E. Sacks
                                         State Bar No. 1103204

P.O. Address:
330 East Kilbourn Avenue, Suite 560
Milwaukee, WI 53202
(414) 944-8900
(414) 944-8901 (facsimile)
Ronald.stadler@jacksonlewis.com
Jonathan.sacks@jacksonlewis.com

---

[5] To the extent that Plaintiffs are attempting to bring a Fourteenth Amendment Due Process Claim, that allegation is redundant of their First Amendment Claim and if the First Amendment claims are dismissed, any Due Process claims should be dismissed as well. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1017 (7th Cir. 2000) (explaining that "substantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon"); *Hill v. Harrington*, No. 18 C 05592, 2019 U.S. Dist. LEXIS 144083, at *12 (N.D. Ill. Aug. 25, 2019) ("[A] substantive due process claim cannot stand where another, more specific constitutional provision already provides relief for the same injury."); *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1413 (S.D. Fla. 2014) ("Under this same rationale, the Plaintiff's substantive due process claim fails to the extent based on a First Amendment violation, because a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable, and a substantive due process right to free speech is duplicative of a First Amendment retaliation claim.") (internal citations omitted).