UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

N.J., by his next friend, KELLY JACOB,

        Plaintiff,

    v.                                                Case No. 20-C-227

DAVID SONNABEND, individually and in
his official Capacity as Associate Principal of
Shattuck Middle School,

        Defendant.

---

TARA LLOYD,

        Plaintiff,

    v.                                                Case No. 20-C-276

BETH KAMINSKI, individually and in
her official Capacity as Principal of
Kettle Moraine High School,

        Defendant.

---

## DECISION AND ORDER

---

        Plaintiffs in this consolidated case brought suit against the Principal and Associate Principal of their respective schools, Defendants Beth Kaminksi and David Sonnabend, individually and in their official capacities, seeking injunctions to allow Plaintiffs to wear shirts bearing images of firearms and related text. Before the court is Defendants' motion for judgment on the pleadings on the ground that none of the shirts at issue are constitutionally-protected speech. For the following reasons, the motion will be denied.

## ALLEGATIONS OF THE COMPLAINTS

### A. The Shattuck Middle School Case

Plaintiff N.J. is a minor who attends Shattuck Middle School, a public school operated by the Neenah School District. According to the complaint, N.J. is a supporter of the Second Amendment and a gun enthusiast who "believes in the value to society of personal possession of arms as guaranteed by the Second Amendment." In this case, there are two shirts at issue: the "Smith & Wesson shirt" and the "Patriot Sweatshirt." The Smith & Wesson shirt contains the inscription "Smith & Wesson Firearms – Made in the USA Since 1852," and has the logo of the Smith and Wesson Company alongside the image of a revolver. The Patriot Sweatshirt has the inscription "I'm a Patriot – Weapons are part of my religion," along with the text "$\frac{2}{A}$" and "$\frac{17}{76}$." Additionally, the Patriot Sweatshirt depicts a medieval helmet alongside two antique rifles. These images of the two shirts at issue in N.J.'s case are taken from Defendants' Joint Brief in Support of Motion for Judgment on the Pleadings:




Dkt. No. 15 at 3.

N.J. alleges that, on February 11, 2020, N.J. wore a shirt to school that is not the subject of this case, and was told to cover it up. In response, Jason Kraayvanger, the boyfriend of N.J.'s mother, brought the Patriot Sweatshirt to school so that N.J. could cover his shirt. Defendant Sonnabend, however, allegedly told Kraayvanger that the Patriot Sweatshirt was unacceptable, prompting Kraayvanger to take N.J. out of school for the day. The next day, February 12, 2020, N.J. wore the Smith & Wesson shirt to school, and again, Sonnabend allegedly required N.J. to cover the shirt with another article of clothing. These rejections, N.J. claims, were the result of Shattuck Middle School's dress code, which allegedly "does not provide objective criteria by which Plaintiff can determine what clothing is restricted."

According to N.J., the dress code requires that clothing be "appropriate," and that the code reserves the school's right to "ask a student to change" or to "send students home if their appearance is not deemed appropriate." Furthermore, N.J. alleges that the Neenah School District has a custom, policy, or practice of prohibiting students from wearing clothing that depicts weapons, even in a non-threatening, non-violent manner. As a result, N.J. claims that, as a result of restricting his ability to wear these two shirts, Sonnabend is violating his freedom of speech, as guaranteed by the First Amendment. Additionally, N.J. alleges that the school dress code is unconstitutionally overbroad, and that as a result of the lack of objective criteria in the dress code by which a student can determine what clothing is restricted, Sonnabend is denying N.J. his right to due process under the Fourteenth Amendment.

**B. The Kettle Moraine High School Case**

Plaintiff A.L. is a minor who attends Kettle Moraine High School, a public school operated by the Kettle Moraine School District. Similar to N.J., A.L. claims to be a Second Amendment supporter who believes in the value to society of personal possession of firearms. At issue in this

3

case is one shirt, the "WCI Shirt." According to the complaint, the WCI Shirt advertises for and supports Wisconsin Carry, Inc., a gun rights organization. The shirt has the inscription "Wisconsin Carry, Inc." and is accompanied with the logo of the organization, which is a handgun tucked behind the inscription, as if the gun were in a holster and the inscription were a belt. The shirt also contains text from Wisconsin's Constitution: "The people have the right to keep and bear arms for security, defense, hunting, recreation, or any other lawful purpose." Wis. Const. art. I, § 25. Below are images of the two sides of the WCI shirt, with the front taken from Defendants' Brief and the back taken from Plaintiffs' Brief in Response:

 

Dkt. No. 15 at 4; Dkt. No. 18 at 5.

A.L. alleges that he wore the WCI Shirt on February 19, 2020, and was taken out of class by Defendant Kaminski. According to the complaint, Kaminski told A.L. that he had to cover the WCI Shirt with his jacket. Kaminski told A.L. that the school dress code prohibits wearing anything threatening, violent, and illegal; however, according to A.L., the dress code makes no mention of such a requirement.

4

A.L. also alleges that the Kettle Moraine School District has a custom, policy, or practice of prohibiting students from wearing clothing that depicts weapons, even in a non-threatening, non-violent manner. A.L. further claims that Kaminski is violating A.L.'s freedom of expression, as guaranteed by the First Amendment, and that the dress code policy lacks objective criteria by which a student can determine what clothing is restricted, denying A.L. due process under the Fourteenth Amendment.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the non-movant. *Id.* To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

The "can of worms" out of which these cases arise was opened by the Supreme Court in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). There the Court reversed a lower court ruling dismissing a suit against school officials who had prohibited a group of high school and junior high school students from wearing black armbands during school hours as a sign of protest of the Vietnam War. The Court held that in order to justify prohibition of a particular expression of opinion, public school officials would have to show "the forbidden

5

conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id.* at 509 (quotation marks and citation omitted).

Justice Black warned in dissent that the Court's holding would usher in a new era in which the power to control pupils by the elected officials of public schools would be transferred to the Supreme Court, or federal courts in general. *Id.* at 515 (Black, J., dissenting). In Justice Black's view, the record before the Court in that case "overwhelmingly show[ed] that the armbands did exactly what the elected school officials and principals foresaw they would, that is, took the students' minds off their classwork and diverted them to thoughts about the highly emotional subject of the Vietnam war." *Id.* at 518. Justice Black rejected the notion that "public school students [were] sent to the schools at public expense to broadcast political or any other views to educate and inform the public." *Id.* at 522. In his view, students were sent to school to learn, and school officials, answerable to parents and taxpayers, were best situated to determine whether unsolicited student commentary on controversial topics unreasonably interfered with that process. Finally, Justice Black expressed concern that the Court's holding would seriously undermine the ability of school officials to exercise the authority needed to accomplish their purpose: "Turned loose with lawsuits for damages and injunctions against their teachers as they are here, it is nothing but wishful thinking to imagine that young, immature students will not soon believe it is their right to control the schools rather than the right of the States that collect the taxes to hire the teachers for the benefit of the pupils." *Id.* at 524–25.

Whether or not Justice Black was prescient in his comments in his dissent fifty years ago is beside the point. It is the majority of the Court that determines the law this court must apply and, as noted above, the majority held that high school and junior high school students may express their opinions, even on controversial subjects, so long as they do so "without 'materially and

6

Case 1:20-cv-00227-WCG    Filed 11/06/20    Page 6 of 10    Document 23

substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school' and without colliding with the rights of others." *Id.* at 512–13 (quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir.1966)).

In their motion for judgment on the pleadings, the defendant school officials do not argue that Plaintiffs' shirts had such an effect on the operation of the school. Instead, they contend that the shirts worn by Plaintiffs do not constitute protected speech for purposes of the First Amendment. Defendants contend that none of the shirts constitute protected speech primarily because the shirts fail to convey a particularized message, and because two of the shirts are "merely advertisements for companies that happen to have a picture of a firearm on them." Jt. Br. in Support, Dkt. No. 15, at 8. Plaintiffs, on the other hand, assert that the shirts are protected speech, citing the text that accompanies the images on the shirts and noting that, even if only commercial speech, they are still entitled to First Amendment protection.

Clothing, as such, is not generally considered constitutionally protected expression. *Brandt v. Bd. of Educ. of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007). Of course, clothing can be protected speech where it is intended and understood to convey a clear message as, for example, the black armbands at issue in *Tinker*, which the Court described as "closely akin to 'pure speech' which, we have repeatedly held, is entitled to comprehensive protection under the First Amendment." 393 U.S. at 505–06. Clothing that bears explicit messages or symbols which are intended to convey a political or other message can clearly amount to speech entitling the wearer to First Amendment protection. *Cohen v. California*, 403 U.S. 15 (1971). As Judge Adelman observed in addressing the same issue in *Schoenecker v. Koopman*, "True, wearing the shirts is conduct, but the shirts themselves are pure speech, in that they contain images and words that convey a message." 349 F. Supp. 3d 745, 751 (E.D. Wis. 2018).

Defendants argue that in order for printed words or pictures on a shirt to receive constitutional protection, the message being conveyed must be clear and unmistakable. Reply Br., Dkt. No. 19, at 4. But that is not the law. The fact that the message may be ambiguous and open to interpretation does not deprive it of constitutional protection. "[A] narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995). If it was, the First Amendment "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Id.*

Applying these principles to the pleadings in this case, the court concludes that each of the shirts at issue plausibly falls within the protection afforded by the First Amendment. Defendants argue that the Smith & Wesson shirt is not protected speech and is instead an advertisement for a company that just happens to contain a picture of a firearm. Because it is merely the name of a company with the image of a firearm on a shirt, they claim the shirt fails to convey any "particularized message," such that it would be entitled to protection by the First Amendment. N.J., for his part, argues that even if it is commercial speech, the shirt is still entitled to some constitutional protection.

Commercial speech is "speech that proposes a commercial transaction." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014). In wearing his Smith & Wesson shirt to school, N.J. was not proposing a commercial transaction, at least according to the complaint. Plaintiffs allege in their complaint that each of them "believes in the value to society of personal possession of arms as guaranteed by the Second Amendment." Compl., Dkt. No. 1, ¶ 12. Each "owns a variety of shirts that express his beliefs, and he sometimes wears them to school." *Id.* ¶ 13. Among the shirts N.J. wears to convey his belief in the importance of firearms, is the shirt

8

with the words "Smith & Wesson Firearms – Made in the USA Since 1852." The shirt also has the logo of Smith & Wesson and an image of a revolver.

The message of the Patriot sweatshirt N.J. wears is even more overtly political. The inscription reads "I'm a Patriot – Weapons are Part of My Religion." The shirt also bears abbreviated symbols of the Second Amendment and the year 1776, and images of a medieval helmet and two antique rifles with forks in place of muzzles. Both shirts are intended to convey N.J.'s belief in the importance of the right to bear arms.

The same is true of the WCI shirt that A.L. sought to wear at the Kettle Morraine High School. Defendants argue that the WCI shirt is merely an advertisement, and that in any event, the shirt does not convey any particularized message. They contend that the court should not consider the text from the Wisconsin Constitution on the back of the shirt because it is not included in the description of the shirt set out in the complaint. It is well-established, however, that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). While not strictly speaking a "document," the WCI shirt is the equivalent and serves the same purpose in this case. The WCI shirt is referred to in A.L.'s complaint and is central to his claim. The court therefore considers the message of the entire shirt and not just the language and image of a handgun on the front of the shirt, though the front alone would appear to be constitutionally protected for the same reason as the message conveyed by the Smith & Wesson shirt.

Not only did Plaintiffs intend to convey a clear message in wearing their shirts, it also seems clear that school authorities understood the message Plaintiffs were intending to convey, at

9

least to the extent their message included an appreciation for the right to own firearms. School officials are alleged to have told both N.J. and A.L. that they were prohibited from wearing the shirts because of their depiction of firearms. Compl. ¶ 16. Based on the allegations of the complaint, it at least appears that the school officials' response to N.J.'s shirts was motivated by the very message N.J. sought to convey in a school setting.

Each of the shirts at issue is therefore entitled to constitutional protection. That protection, of course, is not absolute. Whether Defendants were justified in prohibiting Plaintiffs from conveying their messages in the manner and place chosen by them remains to be decided. Defendants' motion for judgment on the pleadings on the ground that the shirts lack constitutional protection, however, is denied.

**SO ORDERED** at Green Bay, Wisconsin this 6th day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
